UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 08-013 (RCL) |
| | ) | |
| DAVID NIKOLOW , | ) | Judge Royce C. Lamberth |
| | ) | |
| Defendant. | ) | |
| | ) | |

## SECOND SUPPLEMENT TO MOTION FOR RELEASE PENDING TRIAL

David Nikolow, by and through undersigned counsel, respectfully submits this second supplement regarding his motion for release pending trial, as invited by the Court to do during oral argument earlier this week.

Specifically, the Court suggested an inquiry into the legislative history of 18 U.S.C. § 3142(f)(1)(E). There is none. This subsection was tucked into PL 109-248, the Adam Walsh Child Protection and Safety Act of 2006, signed into law by President Bush on July 27, 2006. The only comments made about this law were made – not by Congress – but by President Bush. Understandably, his statement, a copy of which is attached hereto as Exhibit A, focuses on what the vast bulk of that law addressed: the protection of children.

When we were unable to find any legislative, we called Westlaw® and spoke with one of their reference attorneys, to make sure we had not missed something. The reference attorney confirmed that, other than President Bush's statement, there was no legislative history regarding § 3142(f)(1)(E).

It seems apparent, nonetheless, that § 3142(f)(1)(E) was adopted to "plug the gap" recognized by our Circuit, with regard to cases involving felons-in-possession, in *United States v. Singleton*, 182 F.3d 7 (D.C. 1999), namely, that felon-in-possession offenses under 18 U.S.C.

§922(g) did not constitute violent crimes under the Bail Reform Act and were not, therefore, legitimate bases upon which to even request a detention hearing. *Id.* at 9. Specifically, in *Singleton,* the D.C. Circuit held that: 1) a *categorical approach is mandated* with regard to an analysis of the Bail Reform Act, *id.* at 9 – 11; and 2) "the plain meaning of the Bail Reform Act excludes felon-in-possession offenses [under 18 U.S.C. §922(g)] from the category of violent crimes that trigger detention hearings." *Id.* at 9.

We respectfully submit that *Singleton*'s holding and detailed analysis make clear that the government may not, under the charges brought against Mr. Nikolow, even *seek* pretrial detention here.[1] This is because, under the categorical approach mandated by *Singleton,* those crimes are "exclude[d] . . . from the category of violent crimes that trigger detention hearings." *Id.*

*Singleton* begins its analysis with the bedrock principle that "[d]etention until trial is relatively difficult to impose." *Id.* This, in turn, is because under our Constitution, people are presumed innocent. *Id.* at 13.

The D.C. Circuit then discusses the procedural steps in the detention process. "First, a judicial officer must find one of six circumstances triggering a detention hearing. *See* 18 U.S.C. § 3142(f). Absent one of these circumstances, detention is not an option." *Id.* at 9.

In this case, under the approach mandated by *Singleton,* it is clear that "detention is not an option" because the charges filed against Mr. Nikolow do not constitute a recognized "trigger." That is, those charges fall outside any category that triggers the option of seeking pretrial detention. Although subsection (E) has been added to § 3142(f)(1) since *Singleton* was decided, the rules laid down in *Singleton* leave no doubt about this conclusion.

---

[1] Mr. Nikolow has been charged here with receiving stolen property and conspiracy to transport stolen goods.

Subsection (E) applies, on its face, only to "any felony that is not otherwise a crime of violence that involves . . . the possession or use of a firearm . . ."  As the court found in *Singleton,* § 3142(f) "refers to the statutory provision creating a crime rather than the factual incident constituting the crime." *Id.* at 11.  "Case-specific facts are thus relevant at a detention hearing, *see* § 3142(g), *but not when considering the government's motion under § 3142(f)(1)(A) to hold such a hearing."  Id.* at 12 (emphasis added).  The D.C. Circuit then discusses why the alternative case-by-case approach "would collapse the distinction between the holding that triggers a detention hearing and the factors relevant at the hearing . . ." *Id.*  The Court ends that paragraph by "conclud[ing] that § 3142(f) contemplates that offenses eligible for pretrial detention hearings are *ascertainable categorically by reference to their elements*, either because *these elements* entail the use of violence, *see* § 3156(a)(4)(A), or the risk of violence, *see* § 3156(a)(4)(B)." *Id.* (emphasis added).

As noted above, at issue in *Singleton* was whether § 922(g) is a crime of violence "under § 3142(f)." *Id.*  The answer to that question, held the D.C. Circuit, "turns on a question of law to which the underlying facts of a particular case are irrelevant." *Id.*

Turning to that question of law, the Circuit noted that it did not "write on a clean slate because the Supreme Court has already recognized that Congress limited pretrial detention of persons who are presumed innocent to a subset of defendants charged with crimes that are 'the most serious' compared to other federal offenses." *Id.* at 13 (quoting *United States v. Salerno,* 481 U.S. 739, 747 (1987)) (fn. omitted).  The Court found that the reference in the Senate Report to detainable offenses under the D.C. Code "further suggest[s] that the general language of the federal [detention] statute does not embrace a large category of [gun] possession offenses . . ." *Id.*

3

In the course of rejecting the argument proffered by the government in *Singleton,* the D.C. Circuit found that "[f]or a risk of violence to matter under § 3142, it must arise 'in the course of committing the offense.'" *Id.* at 14 (citing 18 U.S.C. § 3156(a)(4)(B)). The government argued that this was a "purely temporal restraint," but the Court rejected that interpretation.

> First, the nexus requirement in § 3156(a)(4)(B) is more than merely temporal because the phrase "in the course of committing" indicates that *some aspect of the charged offense must create the risk of violence in order to itself qualify as a crime of violence.* Absent a *direct relationship* between the offense and a risk of violence, *the possibility of violence is not a basis for pretrial detention on a charge that on its face does not involve violence as an element*.

*Id.* (emphasis added).

Obviously, none of those requirements is met in Mr. Nikolow's case. All the government has argued here is that the presence of guns at various properties allegedly owned or controlled by Mr. Nikolow, none of which is alleged to have been used in any offense with which he has been charged, creates the possibility of violence. As the last-quoted passage from *Singleton* makes clear, however, that, as a matter of law, is an insufficient basis for even *requesting* a detention hearing, let alone as a basis for actually detaining him pretrial.

Subsection (E), under which Mr. Nikolow was held, requires that the felony with which he is charged "involves the possession or use of a firearm . . . ." Under *Singleton*'s mandate of a categorical approach, it is evident that the crimes with which Mr. Nikolow has been charged do not "involve" the possession or use of a firearm. What the Circuit noted about § 922(g) in *Singleton* is equally applicable to charges that have been lodged against Mr. Nikolow, involving allegations that he received stolen property and conspired to transport stolen goods: ". . . nothing inherent in a § 922(g) offense creates a 'substantial risk' of violence warranting pretrial

4

detention." *Id.* at 15.  Indeed, as the D.C. Circuit recognized in *Singleton,* "[n]umerous felonies involve economic crimes or regulatory offenses which, while serious, do not entail a substantial risk of physical force. . . . Section 3142(f) implicitly recognizes this fact *because it does not authorize pretrial detention for such offenses.*" *Id.* (emphasis added).

For all of these reasons, and those cited in Mr. Nikolow's earlier papers, the offenses with which he had been charged do not warrant even a request for a detention hearing.  He is being wrongfully detained and must be released immediately under the clear, binding law in this Circuit, embodied in *Singleton* and in *Henderson v. United States*, 687 U.S. 918 (D.C. 1996), which we discussed in our last filing on this issue.

WHEREFORE, based on the foregoing reasons and any others that may appear to the Court, Mr. Nikolow respectfully requests that this Court grant the relief requested and release him pending trial.

Dated:  May 2, 2008                              Respectfully submitted,

                                                 David Nikolow
                                                 By Counsel


                                                   /s/ Danny Onorato_____
                                                 G. Allen Dale
                                                 Danny Onorato
                                                 601 Pennsylvania Avenue, N.W.
                                                 North Building, Suite 900
                                                 Washington, D.C.  200004
                                                 Telephone:  (202) 628-4199
                                                 Facsimile:  (202) 628-4177

# EXHIBIT A



2006 WL 2076691                                                                                            Page 1
2006 WL 2076691 (White House)
**(Cite as: 2006 WL 2076691 (White House))**

The White House
Office of Communications

*1 PRESIDENT SIGNS **H.R.** 4472, THE ADAM WALSH CHILD PROTECTION AND SAFETY
ACT OF 2006
July 27, 2006
Office of the Press Secretary

For Immediate Release

The Rose Garden
1:11 P.M. EDT
THE PRESIDENT: Thank you all for coming. Please be seated. Welcome and good
afternoon. In a few moments I will sign the Adam Walsh Child Protection and
Safety Act of 2006. Twenty-five years ago today, Adam Walsh was abducted from a
department store and he was later found murdered. In the years since, his
parents, John and Rev Walsh, have become advocates for missing children.
They've helped combat child abduction and exploitation across this country. And
the bill I sign today will strengthen federal laws to protect our children from
sexual and other violent crimes, will help prevent child pornography, and will
make the Internet safer for our sons and daughters. I want to thank you all for
joining us today, and thank you for your tireless crusade. (Applause.)
I'm pleased to be up here with the Attorney General, Al Gonzales. I want to
thank all the members of the House and the Senate who have joined us. John, as
you can see, you've attracted quite a crowd here.
MR. WALSH: S.W.A.T. team for kids.
THE PRESIDENT: Yes, it is, S.W.A.T. team for kids.
I appreciate very much the bill sponsors who have joined us, and the committee
chairmen and the leadership that has made this bill possible. This is a good
piece of bipartisan legislation, and I'm really going to be proud to sign it.
I want to thank all the family members of victims who have joined us today. I
particularly want to say hello to Elizabeth Smart and Amie Zyla. Thank you all
for coming.
You know, having someone harm your child is one of the worst nightmares a
parent could face. And the families who have joined us today have felt that
pain firsthand. In your suffering and loss, many of you have found the courage
to become advocates for the safety of other children. Because of your efforts,
this important measure is going to become the law of the land, and the children
of parents you may never meet will be spared the anguish your families have
known. So thank you for your contribution.
Protecting our children is our solemn responsibility. It's what we must do.
When a child's life or innocence is taken it is a terrible loss -- it's an act
of unforgivable cruelty. Our society has a duty to protect our children from

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

2006 WL 2076691                                                                    Page 2
2006 WL 2076691 (White House)
(Cite as: 2006 WL 2076691 (White House))

exploitation and danger. By enacting this law we're sending a clear message across the country: those who prey on our children will be caught, prosecuted and punished to the fullest extent of the law.
I appreciate working with Congress in the past to give law enforcement the tools they need to go after criminals who kidnap and exploit children. In 2003, I signed the PROTECT Act, that expanded the use of Amber Alerts, that makes grants to all 50 states so law enforcement can quickly alert the public about missing children and their abductors. We also launched Operation Predator to help law enforcement track down and arrest foreign pedophiles and human traffickers and sex tourists and Internet pornographers who prey on our children.
*2 Earlier this year, the Department of Justice, led by Al Gonzales, launched Project Safe Childhood to help federal, state and local enforcement officials investigate and prosecute crimes against children that are facilitated by the Internet and other electronic communications.
This new law I sign today builds on the progress in four important ways: First, the bill I sign today will greatly expand the National Sex Offender Registry by integrating the information in state sex offender registry systems and ensuring that law enforcement has access to the same information across the United States. It seems to make sense, doesn't it? See, these improvements will help prevent sex offenders from evading detection by moving from one state to the next. Data drawn from this comprehensive registry will also be made available to the public so parents have the information they need to protect their children from sex offenders that might be in their neighborhoods.
Second, the bill I sign today will increase federal penalties for crimes against children. This bill imposes tough mandatory minimum penalties for the most serious crimes against our children. It increases penalties for crimes such as sex trafficking of children and child prostitution; provides grants to states to help them institutionalize sex offenders who've shown they cannot change their behavior and are about to be released from prison.
Third, the bill I sign today will make it harder for sex predators to reach our children on the Internet. Some sex predators use this technology to make contact with potential victims, so the bill authorizes additional new regional Internet Crimes Against Children Task Forces. These task forces provides funding and training to help state and local law enforcement combat crimes involving the sexual exploitation of minors on the Internet.
Fourth, the bill I sign today will help prevent child abuse by creating a National Child Abuse Registry, and requiring investigators to do background checks on adoptive and foster parents before they approve to take custody of a child. By giving child protective service professionals in all 50 states access to this critical information, we will improve their ability to investigate child abuse cases and help ensure that the vulnerable children are not put into situations of abuse or neglect.
This is a comprehensive piece of legislation, and it's an important bill. Our nation grieves with every family that's suffered the unbearable pain of a child

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

2006 WL 2076691 Page 3
2006 WL 2076691 (White House)
**(Cite as: 2006 WL 2076691 (White House))**

who's been abducted or abused. This law makes an important step forward in this country's efforts to protect those who cannot protect themselves.
I thank you for coming for witness to this. It's now my high honor to sign the Adam Walsh Child Protection and Safety Act of 2006. (Applause.)
(The bill is signed.) (Applause.)
END 1:19 P.M. EDT
2006 WL 2076691 (White House)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.